THE COMMONWEALTH OF PUERTO RICO, ETC., Plaintiff, Appellant and Appellee, v. OSCAR F. BRAVO ET AL.. Defendants, and the former Appellee-Appellant.

No. 11515.   Argued June 11, 1956.—Decided December 13, 1956.

José Trías Monge, Attorney General, and V. M. Sánchez Fernández and Jesús Zequeira, Assistant Attorneys General, for plaintiff, appellant and appellee.  A. Ramírez Silva for defendant, appellee and appellant.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

At the request of the Industrial Development Company of Puerto Rico and for its use and benefit the Commonwealth of Puerto Rico filed a condemnation suit to acquire a parcel of 5.017 cuerdas of land located at Barrio Sábalos

of the Municipality of Mayagüez.[1]   This parcel was segregated from a principal property consisting of 7.808 cuerdas of land owned by Oscar F. Bravo,[2] there remaining 2 separate strips of land, one to the east and another to the west of the segregated parcel.   Plaintiff deposited in court the sum of $8,779.75 as a just and reasonable compensation for the condemned parcel and was vested with title to that land by resolution to that effect.

In his answer, defendant Bravo denied that the just compensation for the condemned parcel was the amount deposited by the plaintiff and claimed instead the sum of $19,717.27 plus $5,000 for severance damages and later amended his answer to claim the sums of $30,102 and $9,780 respectively for those items.

After a trial and a personal inspection, the lower court rendered judgment holding that the sum of $15,051 constituted the just compensation to which defendant was entitled for the condemned parcel and ordered plaintiff to deposit the difference between that amount and the sum already deposited plus interest at the legal rate.   As ground for its judgment the lower court stated that (1) the reasonable market value of the condemned parcel at the time of the taking was $15,051, and that (2) defendant is not entitled to severance damages.

■ Both parties appealed.   The defendant assigns the commission of three errors; in the first he attacks the pronouncement of the lower court denying him compensation for severance damages.[3]

---

[1] The condemnation proceeding was filed pursuant to the provisions of Act No. 188 of May 11, 1942, as amended by Act No. 99 of April 18, 1952, Reorganization Plan No. 10 of 1950, approved by the Legislature of Puerto Rico, Act No. 377 of May 8, 1951, and the General Condemnation Act of March 12, 1903, as amended.

[2] The Crédito y Ahorro Ponceño Bank was eliminated as a party defendant for lack of interest in the suit.

[3] Plaintiff-appellee and appellant has not answered the errors assigned and discussed by the defendant-appellant and appellee but merely assigned and discussed the commission of two errors in support of his appeal.

In our opinion this first error was committed. The main property from which the condemned parcel was segregated is located on the southern part of the city of Mayagüez and is bounded on the north by Insular Highway No. 2 leading from that city to San Germán. It is 450 meters away from the urban zone after passing a barrio known as "Cuesta de las Piedras," which is a low-cost radial housing development. There is a distance of about 300 meters between this development and the condemned parcel, and 200 meters further away, to the west of the parcel, lies the ward of "Sábalos," another low-cost housing project. The trial court concluded that "the most profitable use of the condemned parcel (together with the remainder of the principal property) was for a housing project for people of average income." And as to the effect of the segregation it concluded: "The condemned parcel was segregated from the center of the main property, there remaining a strip of 30 meters facing the east and another strip of 40 meters facing the west. With such division the remaining land lost the flexibility enjoyed by the main property to be devoted to its best use which it might have kept if the condemned parcel had been segregated from one of the ends of the property. But it was segregated from the center because Mr. Waldemar Bravo, administrator of defendant's property, requested that in taking the property, a 30-meter strip of land be left on the east side of the main property, at which point it adjoined an industrial establishment owned by Mr. Bravo himself. Consequently, we believe that defendant is precluded from claiming severance damages.[4] (Tr. R. pp. 21 and 22, First Part.)

---

[4] The lower court based its finding on the testimony of engineer Samuel Díaz Irizarry, who testified verbatim:

"A—When the Industrial Development Company decided to acquire that parcel for industrial use it asked me to get in touch with the owner of the parcel in order to study the land and the acquisition.

.    .    .    .    .    .    .    .

The lower court erred in considering that the acts of the administrator of defendant's property precluded the latter from claiming severance damages.

The evidence merely discloses, as to Waldemar Bravo's powers, that he was co-administrator of the property of defendant, his father Oscar F. Bravo, and that he was also the lessee of the condemned land. Therefore. it has not been established that Waldemar had any powers, faculties or authority to bind defendant, other than those generally possessed by an administrator or a lessee. And here, certainly, what the lower court attributes to Waldemar is neither an act of administration nor a faculty pertaining to a lessee which is binding on the lessor.

When Waldemar requested, according to the findings of the lower court, that in taking the land a 30-meter strip on the eastern side of the main property be spared, he decided by himself that the condemned land be segregated from the

"A—Originally, I got in touch with Waldemar Bravo to inform him of the purpose of the Development Company asking him permission to study the land and fix the boundaries of the parcel in which the Development Company was interested.

.        .        .        .        .        .        .        .

"A—We have to fix the boundaries of the parcels that we are going to take. We always get in touch with the owner to hear his point of view. We did so in this case and Mr. Bravo indicated the convenience that we move the northeastern boundary about 30 or 40 meters away from the building located thereon, one that serves as garage and commercial establishment. We fixed the boundary of our parcel 30 meters away from the building informing Mr. Bravo who voiced no objection." (Tr. E. 164–65.)

On cross-examination he testified:

"Q—In referring to Mr. Bravo, do you mean Mr. Waldemar Bravo, present here?

"A—Yes, sir.

.        .        .        .        .        .        .        .

"Q—So that the layout of the condemned parcel which you made, was made at Mr. Bravo's request?

"A—By mutual agreement.

.        .        .        .        .        .        .        .

"Q—In this project we could have even included the building and it would not have affected us. We only moved to that distance there, at the request of Mr. Waldemar Bravo." (Tr. E. 165–66.)

center of the main property, thereby causing a reduction in the value of the remainder. In the absence of express authorization Waldemar could not lawfully bind the owner of the property by compromising the rights inherent in the owner under his dominion title.[5] The evidence does not disclose that Waldemar had such scope of authority. Even where a person acts as attorney in fact of another, an express agency is required in order to compromise, alienate, mortgage or execute any other act of strict ownership, for an agency stated in general terms only includes acts of administration. Section 1604 of the Civil Code (1930 Ed.)— 31 L.P.R.A. § 4425.

Consequently, the owner was not precluded, as the lower court held, from claiming severance damages.

■■ The rule to determine the measure of severance damages when part of a tract is taken has already been established by our cases. It is the difference between the fair market value of the property as a whole before the taking and the fair market value of what remains. *People* v. *García,* 66 P.R.R. 478; *People* v. *Anadón,* 69 P.R.R. 766; *People* v. *Soc. Agric. Mario Mercado e Hijos,* 72 P.R.R. 740. We also held in this last case that the owner must show the existence of such damages by affirmative evidence.

There is evidence in the record concerning such damages but the lower court must set forth the corresponding findings of fact and based on such findings assess the proper damages. Therefore, the judgment appealed from will be reversed and the case remanded for further proceedings.

■ The second assignment is to the effect that the court erred "in failing to admit proof of contemporaneous sales of similar lands and, in the alternative, since defendant's theory is that in Mayagüez it is difficult to obtain, because of a shortage, adequate lots for housing projects causing a raise

---

[5] We say this because according to the lower court Waldemar's action bars the owner of the property from claiming severance damages, which is tantamount to a waiver of part of the value of the remaining parcels.

in the value of such lands, that the court erred in failing to admit that evidence for such purposes."

We have examined the rejected evidence and we cannot agree with defendant-appellant that the error assigned was committed. These were sales of lots located in the urban or industrial zone of the city of Mayagüez. As we have seen, the condemned property is not within this area. See *Housing Authority* v. *Viera*, 72 P.R.R. 683; *Cf. Commonwealth of Puerto Rico, etc.* v. *Ocean Park Development Corp., ante* p. 149.

Nor are we impressed by the argument that it was error not to give probative value to exhibit C of defendant-appellant admitted in evidence. In its findings the lower court considered and analyzed that evidence and concluded that because of the lack of similarity between the condemned parcel and that evidenced by the exhibit in question it could not take it into consideration in fixing the market value of the condemned parcel. In so holding, the lower court did not err. The case of *Ocean Park Development Corp., et al., supra*, where we considered a similar question, is distinguishable. There we held, after analyzing the admitted evidence, that it did not lack probative value as the lower court erroneously held. Nor was there any error in failing to admit the evidence in question for the purpose of establishing the increment in value of the land fit for urbanization because of the shortage of such land. The lower court concluded that Mayagüez "has a shortage of land for its urban expansion" and unquestionably it considered this fact in fixing the market value of the condemned parcel.[6]

---

[6] In its finding of fact No. 10 the lower court states:

". . . . . . .

"The Government expert did not consider the great shortage existing in Mayagüez of land economically fit for urbanization purposes.

". . . . . . .

"Undoubtedly, the property would not have that value if there were more land available in Mayagüez for its urban development.

■■ The third assignment to the effect that the lower court erroneously weighed the evidence is without merit. The court had ample evidence to reach a conclusion as to the reasonable market value of the condemned parcel. It heard the testimony of the experts for both parties, it considered documentary and oral evidence and furthermore the trial judge had the opportunity to make his own observations through a personal inspection. In former occasions we have stated that the court is not bound to follow blindly the opinion of the expert witnesses of either party. *Housing Authority* v. *Viera, supra; People* v. *Soc. Agríc. Mario Mercado e Hijos, supra,* at p. 762. In this case the amount that the court determined as just compensation, with the exception of the severance damages which it denied, is within the limits established by the experts in their testimonies. *Housing Authority* v. *Viera, supra; People* v. *Soc. Agríc. Mario Mercado e Hijos, supra; Iriarte* v. *United States,* 157 F. 2d 105; *Love* v. *United States,* 141 F. 2d 981. Since there is sufficient evidence in the record to support the finding of the lower court as to the just and reasonable market value of the condemned parcel, we shall not alter it. *Housing Authority* v. *Colón,* 73 P.R.R. 208, and cases cited therein at p. 213.

We shall now consider the appeal filed by plaintiff-appellee and appellant. He assigns the commission of two errors. In the first he alleges that the judgment appealed from is based on contradictory findings of fact and in the second he challenges the appraisal of the condemned parcel urging that the lower court erroneously weighed the evidence.

As ground for the first assignment it is alleged that while in finding of fact No. 4 the trial court holds that "Mayagüez has had a rather limited activity in the real property market for residential purposes," in another find-

---

It is this lack of land, not taken into consideration by the Government expert, which increased the value of the property due to the actual demand which was relatively limited."

740

ing of fact the court holds that the lack of land available for its urban development "increased the value of the property due to the actual demand which was relatively limited." From those findings it is inferred that in fixing the reasonable market value of the condemned parcel the lower court had in mind the relatively limited demand of lots for residential purposes. The apparent contradiction therefore does not exist. On the other hand, both the first and the second assignments challenge the weighing of the evidence which was submitted to the lower court to assess the condemned parcel. Concerning this, we rely on what we already said upon discussing the third error assigned by defendant-appellant and appellee in his appeal. Having nothing more to add, we conclude that the errors assigned by the plaintiff-appellant and appellee were not committed.

Consequently, the judgment of the lower court will be reversed and the case remanded for further proceedings consistent with the terms of this opinion.

Mr. Justice Sifre did not participate herein.